<div style="sidebar">United States District Court
For the Northern District of California</div>

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD C. TIDWELL, | No. C-13-2621 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; AND DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| JPMORGAN CHASE BANK, N.A., *et al.*, | |
| Defendants. | **(Docket Nos. 17, 32, 39)** |

## I. INTRODUCTION

Before the Court are two motions to dismiss, one filed by Defendants JPMorgan Chase Bank, N.A., for itself and as successor to Chase Home Finance LLC, and JPMC Specialty Mortgage LLC (collectively, "Chase Defendants") and one filed by Defendant NRT, LLC and its subsidiary Valley of California, Inc. d/b/a Coldwell Banker Residential Brokerage (collectively "Coldwell Banker").[1] Plaintiff filed this pro se action against thirteen defendants, bringing nine causes of action in connection with what he contends was the illegal non-judicial foreclosure sale of his property. For the following reasons, these motions will be **GRANTED** as to the first and second causes of action against the Chase Defendants and Coldwell Banker.[2]

---

[1] Defendant Rust Consulting, Inc. has also filed a motion to dismiss. During a hearing on this motion on September 19, 2013, Plaintiff voluntarily dismissed, with prejudice, Rust Consulting, Inc. from this lawsuit. Accordingly, Rust Consulting, Inc's motion is not discussed herein.

[2] On June 17, 2013, Plaintiff filed a Notice of Lis Pendens. (Dkt. No. 7). Under California law, a pro se litigant may not record a notice of lis pendens unless it has been approved by a judge. Cal. Code of Civ. P. § 405.20. Because the Court finds that Plaintiff has failed to state a federal claim, and is declining at this point to address Plaintiff's state law claims, Plaintiff's request to have

Also before the Court is Plaintiff's motion for default judgment as to Defendant Homesale, Inc. For the following reasons, this motion is **DENIED**.[3]

## II. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Edward C. Tidwell ("Plaintiff"), who is pro se, filed the case at bar on June 7, 2013, seeking monetary compensation and the cancellation of a deed of sale in connection with what he contends was the illegal non-judicial foreclosure of his property on February 4, 2011. (Complaint ¶ 1, Dkt. 1). The real property in question is located at 5157 Roundup Way in Antioch, California ("Property"). (*Id.* ¶ 2).

A. <u>Transactions Regarding the Property and Plaintiff's Allegations</u>

On August 2, 2005, Plaintiff obtained a residential loan in the amount of $455,000.00 secured by a deed of trust ("DOT"), encumbering the Property. (Complaint, Ex. C, at 1). This deed of trust lists Plaintiff as borrower, Argent Mortgage Company, LLC ("Argent") as lender/beneficiary, and Town and Country Title Services, Inc. ("T&C") as trustee. (*Id.* at 1-2).

Following Plaintiff's default, T&C recorded a Notice of Default and Election to Sell Under Deed of Trust with the Contra Costa County Recorder's Office on May 8, 2006. ("NOD #1"). (Complaint, Ex. J., at 1). NOD #1 asserted that Plaintiff was $15,444.97 in arrears and instructed Plaintiff to contact "WM Specialty Mortgage LLC, without recourse, c/o AMC Mortgage Services, Inc. as Authorized Agent" to find out how much was owed and to arrange payment to stop foreclosure. (*Id.*) Also on May 8, 2006, Argent executed an Assignment of Deed of Trust transferring all beneficial interest in the DOT to WM Specialty Mortgage LLC, without recourse. (Complaint, Ex. D, at 1). This assignment was executed on behalf of Argent by a Dana A. Rosas and was recorded on May 12, 2006. (*Id.*)

---

this court approve his notice of lis pendens is **DENIED** without prejudice. *Cf. Austero v. Aurora Loan Servs., Inc.*, No. C-11-00490 JCS, 2011 WL 1585530 (N.D. Cal. Apr. 27, 2011) ("Because the Court has dismissed Plaintiffs' case, the Court cannot determine whether Plaintiffs will be able to satisfy the requirements for lis pendens, *i.e.*, the probable validity of the claims.").

[3] On September 23, 2013, Plaintiff filed a motion for summary judgment against Homesale, Inc., based entirely on Homesale's failure to appear and respond to Plaintiff's complaint. (Dkt. No. 64). For the same reasons that this Court is denying the motion for default judgment, Plaintiff's motion for summary judgment is **DENIED**.

Following the filing of NOD #1, Plaintiff made an approximately $21,000 payment to AMC Mortgage Services. (Complaint, ¶ 54, Ex. L). Consequently, T&C filed a Notice of Rescission of Notice of Default on July 20, 2006, rescinding NOD #1. (Complaint, Ex. M).

Three months later, Plaintiff again defaulted, and on October 16, 2006, Cal-Western Reconveyance Corp. ("Cal-Western") recorded another Notice of Default. ("NOD #2"). (Complaint, Ex. I, at 1). NOD #2 asserted that Plaintiff was $11,458.85 in arrears and directed Plaintiff to contact WM Specialty Mortgage LLC, c/o AMC Mortgage Service, Inc. to arrange payment. (*Id.*)

On December 6, 2006, two documents regarding the Property were recorded. Just as it had in the May 8, 2006 assignment, Argent recorded an Assignment of Deed of Trust transferring beneficial interest in the DOT to WM Specialty Mortgage LLC, without recourse. (Complaint, Exh. F, at 1). This assignment was executed by Tamara Price, listed as a "Vice President," and Dana A. Rosas, listed as authorized agent. (*Id.*) The assignment was dated October 27, 2006, but, below that date, someone wrote "effective 10/15/2006." (*Id.*). Also on December 6, 2006, WM Specialty Mortgage LLC recorded a Substitution of Trustee which replaced T&C with Cal-Western as trustee under the DOT. (Complaint, Exh. G, at 1). This substitution was signed by Tamara Price as Vice President of WM Specialty Mortgage LLC. (*Id.*) As with the December 6 DOT assignment, this was dated October 27, 2006 but again included the handwritten note "effective 10/15/2006." (*Id.*) The significance of the retroactive October 15, 2006 date appears to be that it is the day before Cal-Western recorded NOD #2.[4]

---

[4] Plaintiff has filed a request for judicial notice (Dkt. 53) that includes unrecorded copies of the October 27, 2006 dated assignment and substitution referenced in this paragraph. These versions do not include the "effective 10/15/2006" annotation. To the extent that Mr. Tidwell is asking this Court to take judicial notice of documents already attached to his Complaint, his request is **DENIED** as moot. Exhibits attached the complaint are already considered for purposes of motions to dismiss. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (recognizing that district courts may consider exhibits attached to the complaint in evaluating a motion to dismiss). To the extent Plaintiff is seeking to have this court take notice of the unrecorded versions of the assignment and substitution, as well as Ms. Price's power of attorney, the foreclosure title policy, the Independent Foreclosure Review, and the Qualified Written Request, his request is **DENIED** as they are not documents whose authenticity is capable of accurate and ready determination. However, in his amended complaint, Plaintiff may, of course, attach these documents as exhibits to have them considered at the pleading stage. The Court **GRANTS** Plaintiff's request to the remaining documents (the county assessor's property detail printout and the writ of execution).

Plaintiff alleges that NOD #2, filed October 16, 2006, was faulty insofar as it was "prematurely" recorded two months prior to the assignment of the DOT from Argent to WM Specialty Mortgage, LLC and the substitution of Cal-Western as Trustee. (Complaint § 51, 59). Essentially, Plaintiff alleges that NOD #2 is defective because at the time Cal-Western recorded it in October 2006, it was not the trustee. Plaintiff also alleges that Ms. Price lacked signing authority at the time she executed the assignment and substitution recorded in December, that she lied about her employment title, and that neither the assignment nor the substitution were executed in the presence of a notary. (*Id.* §§ 43-50, 56, 61). Plaintiff also alleges that the handwritten annotation "effective 10/15/2006" contained in the assignment and substitution is evidence that these documents were "tampered with." (*Id.* § 165).

On May 27, 2010, Cal-Western recorded a Notice of Trustee's Sale. ("NOTS"). (Complaint, Ex. Q, at 1). Plaintiff argues that this Notice was defective because JPMC Specialty Mortgage LLC ("JPMC")[5] (the successor entity to WM Specialty Mortgage LLC) had never secured from Argent (the original beneficiary under the loan) a "legally executed Assignment prior to commencement of the foreclosure sale," and therefore lacked standing to authorize Cal-Western to conduct the foreclosure sale as trustee. (*Id.* ¶ 53). Accordingly, he argues that the foreclosure violated RESPA. (*Id.* ¶ 52). A public auction was held on February 4, 2011. (Complaint, Exh. O, at 2). The Property was purchased by JPMC. (*Id.* at 1).

On February 7, 2011, shortly after the foreclosure, Defendant Coldwell Banker sent Plaintiff a letter titled "Important Notice Regarding Your Occupancy of the Property," indicating that the foreclosure on Plaintiff's home had been conducted by Defendant Chase Home Finance LLC ("Chase Home"). (Compl. ¶ 79, 99; Compl. Ex. S). On September 14, 2011, however, Coldwell Banker issued another notice, this time indicating that the foreclosure had been conducted by Defendant JPMorgan Chase Bank ("Chase Bank"). (Compl. ¶ 79, 107; Compl. Ex. S). Both notices indicated that the foreclosing party had retained Coldwell Banker as the real estate agent for the

---

[5] Where possible, Defendants JPMC Specialty Mortgage LLC, Chase Home Finance LLC, and JP Morgan Chase Bank, N.A. will be referred to collectively as "Chase Defendants." Where individual reference is necessary, they will be referred to as "JPMC," "Chase Home," and "Chase Bank," respectively.

4

property. Compl. Ex. S. The notices set out various options available to Plaintiff, including requesting relocation assistance.

Plaintiff's allegations about the implications of the change of the foreclosing party in Coldwell Banker's notices are not entirely clear. In one place, he appears to allege that this change is evidence that "Defendant Chase Home's privileges to operate as a Foreign LLC was [sic] cancelled effective January 20, 2005."[6] (Complaint ¶ 108). Elsewhere, he notes that a merger of Defendant Chase Home and Defendant Chase Bank was conditionally approved in April 2011, which is after the first notice Plaintiff received from Coldwell Banker, but before the second. ( Complaint ¶ 112-13; Complaint, Ex. T). This merger, he contends, is evidence that "Defendant Chase Home transacted interstate business in violation of this State's laws during the illegal foreclosure sale on February 4, 2011 as a Foreign LLC after filing of [sic] its cancellation on January 20, 2005." (Complaint ¶ 112). Somewhat perplexingly, he cites the merger as evidence that Coldwell Banker lied on the notices they sent him. (*Id.* ¶ 113). If anything, however, the merger between Chase Home and Chase Bank provides an innocent explanation for the change in foreclosing party listed on the two notices. The merger would tend to suggest that though Chase

---

[6] Plaintiff also points to a Supreme Court of New York decision to argue that the real estate agents working for the Coldwell Defendants are lying about the identity of the foreclosing party. (Complaint ¶ 108-09). That case, *Deutsche Bank National Trust Co. v. Ezagui*, No. 3724/07 (N.Y. Sup. Ct. Dec. 21, 2007), concerned an unrelated property and different parties. (Complaint, Ex. P). The court in that case found that the same individual, Tamara Price, had signed paperwork for both the assignee and assignor of the mortgage in question. The court thus found there was cause to be concerned "that there may be fraud . . . or at least malfeasance," and ordered Ms. Price to submit an affidavit regarding her employment history.

Ms. Price has also signed an assignment of deed of trust and substitution of trustee form with respect to the assignment of interest in Plaintiff's property. (Complaint, Exs. F, G). The two documents she signs were executed on the same day, and the companies that she signs for on the two documents appear to be related, but possibly not identical. *Id.* (company on assignment of deed listed as "Argent Mortgage Company, LLC by AMC Mortgage Services, Inc., as authorized agent" and on the substitution of trustee as "WM Specialty Mortgage LLC, without recourse by AMC Mortgage Services, Inc, as attorney-in-fact"). The question of whether there was fraud in the assignment of interest in Plaintiff's property, however, is distinct from the question of whether Coldwell Banker made false statements regarding the identity of the foreclosing party on the notices they sent Plaintiff. It is not at all clear why Plaintiff contends that the alleged irregularity in the assignment documents necessarily means that the Coldwell Banker made false statements in the notices.

5

Home was the foreclosing party, and thus the original notice was correct, Chase Home was subsequently acquired by Chase Bank, who then became the owner of the property in question.

On March 8, 2011, JPMC filed an unlawful detainer action in the Superior Court of California, County of Contra Costa. (Def. Req. for Judicial Notice ("RJN"), Ex. 1).[7] JPMC asserted that the foreclosure proceedings by which it had acquired the Property "were done in compliance with Section 2924 et seq. of the California Civil Code" and that Plaintiff continued to possess the Property without JPMC's consent. (*Id.* at 2). It requested restitution, possession of the property, and $50.00 a day in damages for every day from March 4, 2011 on. (*Id.* at 3). On November 4, 2011, the superior court granted JPMC's summary judgment. (RJN, Ex. 2). The court found that satisfactory proof had been made that "title to the Property has been duly perfected in the name of JPMC" and that it acquired the Property "in accordance with Section 2924 of the California Civil Code." (*Id.*)

On July 5, 2012, Plaintiff sent a letter which he alleges constituted a Qualified Written Request ("QWR") to Defendants Chase Bank and Chase Home. (Complaint ¶ 124). He asserts that this letter requested an independent foreclosure review to "assess Plaintiff's financial injuries as a result of Defendants Chase Bank and Chase Home's errors, misrepresentations or other deficiencies made during the illegal foreclosure processes of Plaintiff's property." (*Id.* ¶ 125). Plaintiff alleges that he did not receive a response within 60 days as required by the Real Estate Settlement Procedures Act ("RESPA"). (*Id.*). Rather, Plaintiff alleges that on February 26, 2013, The Chase Defendants' attorney responded. (*Id.* ¶ 127). This response stated that Plaintiff's letter did not qualify as a QWR as it did "not include a statement of the reasons why it is believed that the account was in error but rather generally sought copies of all documents related to the Property. (Complaint, Ex. K, at 1). The letter also attached a number of the recorded documents pertaining to the Property. (*See id.*)

---

[7] Defendants JPMC and JPMorgan Chase Bank ask this Court to take judicial notice of filings and orders in prior cases involving Plaintiff and the Property. The court **GRANTS** defendants' request. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (citation omitted)).

Plaintiff alleges that the conduct of a number of the defendants violate RESPA. For example, he alleges that JPMC, Chase Bank, and Chase Home failed to provide him notice of default and a period of time in which to take corrective action. (*Id.* ¶ 102). He argues that this notice and opportunity was required by the uniform covenants of the DOT. (*Id.* ¶ 100). Plaintiff also alleges that Chase Bank and Chase Home violated RESPA by failing to respond to his QWR within the required time. (*Id.* ¶125). Plaintiff also appears to allege that the failure of Defendants to secure validly executed assignments of the DOT as well as their failure to notify him upon transfer or assignment of the DOT constitute a violation of RESPA. (*Id.* ¶ 138, 157).

Plaintiff's claims also appear to be based in part on a Consent Order the United States Office of Comptroller of Currency ("OCC") issued regarding Defendant Chase Bank on April 13, 2011. (Complaint ¶ 38). This Consent Order identified "certain deficiencies and unsafe or unsound practices" in Chase Bank's servicing of residential mortgages, and its initiation and handling of foreclosure proceedings. *Id.* (quoting *In re JPMorgan Chase Bank, N.A.*, AA-EC-11-15 (April 13, 2011) (Complaint, Ex. A). The Consent Order indicated that the OCC found that Chase Bank had engaged in the following practices: filing affidavits that were purportedly based on the affiant's personal knowledge or review of the relevant records, when in fact they were not based on personal knowledge or a review of the records; filing affidavits or other mortgage-related documents that were not properly notarized; litigating foreclosure proceedings and initiating non-judicial foreclosures without always ensuring that the promissory note or the mortgage document were properly endorsed or assigned; failure to devote sufficient financial, staffing, and managerial resources to ensure proper administration of foreclosure proceedings; failure to provide adequate oversight, internal controls, and auditing to its foreclosure processes; and failure to sufficiently oversee outside counsel and third-party providers handling foreclosure-related proceedings. (Complaint, Ex. A, at 2-3). Though the Consent Order makes no findings specific to any individual case, Plaintiff alleges that the findings in the Consent Order provide "undisputed facts that Plaintiff and homeowners throughout this State were victimized by Defendants Chase Bank and Chase Home illegal foreclosure sale practices." (Complaint ¶ 42) He does allege that the deficiencies in the foreclosure process for his home were of the type identified in the Consent Order. (*Id.* ¶¶ 57-58).

7

Plaintiff further alleges that Chase Bank failed to comply with various California laws. He argues that Chase Bank failed to comply with California Civil Code § 2923.5 because at no point did any beneficiary of the mortgage ever make contact with him for the "purpose to offer Plaintiff to participate in their loan modification program." (*Id.* ¶ 63). Additionally, he argues that Chase Home "did not qualify as a Foreign LLC to conduct business" in California and therefore could not offer Plaintiff a loan modification as required by state law. (*Id.* ¶ 76). Plaintiff claims that Chase Bank, Chase Home, Cal-Western, and JPMC knowingly filed "felonious" documents in state and federal court. (*Id.* § 153). Similarly, Plaintiff alleges violations of various sections of the California Corporations Code as well as the California Unfair Competition Law. (*Id.* ¶¶ 189, 204).

Ultimately, Plaintiff asserts nine causes of action: (1) Violation of 12 U.S.C. §§ 1813, 188; (2) Violation of 12 U.S.C. §§ 2601 and 2605; (3) Violation of California Civil Code §§ 2923.5, 2923.52-55, and 2924; (4) Violation of California Penal Code § 115; (5) Misrepresentation; (6) Unfair Business Practices and Violation of California Business and Professions Code §§ 17050, 17051, and 17456; (8) Declaratory Relief; (9) Injunctive Relief.[8]

B.  Prior Litigation Regarding the Property

This action represents the fifth state or federal case involving the Property. (Complaint ¶ 33). The two most recent cases are relevant for purposes of this motion and thus briefly described.

   1.  The Prior Federal Action

On March 10, 2011, Plaintiff filed in the Northern District of California the case of *Edward C. Tidwell v. JPMorgan Chase & Company*, et al., No. 11-cv-01145CRB ("*Tidwell I*"). (*Id.*). With the exception of Rust Consulting, Inc., Homesale, Inc., and Prommis Solutions, LLC, every defendant in this action was a defendant in *Tidwell I*. (*Compare* Complaint, at 1, *with* RJN, Ex. 3, at 1). With a few exceptions, discussed *infra*, the complaint in *Tidwell I* contained materially identical allegations arising out of Defendants actions regarding the Property. For example, at Paragraph 51 of the instant complaint, Plaintiff alleges: "The NOD reflects Argent as the Beneficiary and it is defective in that it was prematurely recorded approximately two months prior to the recordation on

---

[8] In his opposition to Coldwell Banker's motion to dismiss, Plaintiff stated he only intended to plead the first, fifth, sixth, and seventh causes of action against Coldwell Banker. (Dkt. 22, at 2).

1  December 6, 2006 of the required Substitution . . . that was fraudulently executed on October 27,
2  2006 . . . ." (Complaint ¶ 51). In *Tidwell I*'s complaint, Plaintiff alleged:"[Defendants] conducted
3  the illegal foreclosure sale of Plaintiff's property under ***the faulty NOD that was recorded***
4  ***approximately two months prior*** to the recordation of the defective Assignment . . . and Substitution
5  . . .that were recorded on December 6, 2006." (RJN, Ex. 3, at 11 (emphasis in original)). Similarly,
6  in Paragraph 63 of this complaint, Plaintiff alleges: "Defendants Chase Bank and Chase failed to
7  comply with the due diligence requirements outlined under California Civil Code § 2923.5 in that at
8  no time whatsoever as the beneficiary or mortgage servicer did Defendants Chase Bank and Chase
9  Home as required by law make contact with Plaintiff for the purpose to offer Plaintiff to participate
10 in their loan modification program." In *Tidwell I*, Plaintiff alleged: "At no time whatsoever acting
11 ***as the beneficiary, servicer or trustee*** did Defendants Chase, Chase Bank, Chase Home or Cal-
12 Western succeed in their efforts as required to ***make contact with Plaintiff*** to offer Plaintiff to
13 participate in their loan modification program." (RJN, Ex. 3, at 12 (emphasis in original)). Many
14 more examples of similar or identical allegations between the two complaints exist. *Tidwell I*
15 alleged four federal causes of action, including a violation of RESPA, the Truth-in-Lending Act, the
16 Home Ownership Equity Protection Act, and the Racketeer Influenced and Corrupt Organizations
17 ("RICO") Act. (RJN, Ex. 3, at 1). It also alleged a number of state law claims, including several
18 that are now alleged in the instant complaint. (*See id.*).

19  Judge Charles Breyer dismissed *Tidwell* with prejudice on June 20, 2011. (RJN, Ex. 4). The
20 court found that Plaintiff had dropped his RICO claim and that the other three federal causes of
21 action were barred by the statute of limitations. (*Id.* at 1). The court then declined to exercise
22 supplemental jurisdiction over the remaining state law claims, and dismissed them without prejudice
23 to Plaintiff refiling them in state court. (*Id.* at 1-2). Plaintiff did not appeal.

24  2. The State Court Action

25  On October 28, 2011, 4 months after the Northern District of California dismissed *Tidwell I*
26 (and a mere one month after Judge Breyer denied Plaintiff's post-judgment motions in that case) ,
27 Plaintiff filed the case of *Tidwell v. JPMorgan Chase & Co, et al.*, No. C11-02461 ("State Action"),
28 in the California Superior Court for Contra Costa County. (Complaint ¶ 33). Every defendant

1 named in the instant suit with the exception of Homesales, Inc. was named as a defendant in the
2 State Action's second amended complaint. (RJN, Ex. 6, at 1). As with *Tidwell I*, the second
3 amended complaint in the State Action contained numerous factual allegations which are either
4 similar or identical to those in the Instance action. (*Compare, e.g.*, Complaint ¶¶ 46-49, 51, 77-78,
5 *with* RJN, Ex. 6, ¶¶ 35-37, 38, 72). Plaintiff alleged purely state law causes of action, including
6 violations of the same California Corporation Code sections, misrepresentation, and the California
7 Unfair Competition Law. (RJN, Ex. 6, at 1). Plaintiff also sought to set aside the trustee sale. (*Id.*).
8 Plaintiff eventually voluntarily dismissed all defendants except JPMC. (RJN, Ex. 7, at 3). On
9 March 19, 2013, the superior court sustained JPMC's demurrer without leave to amend. (RJN, Ex.
10 9). Plaintiff has appealed this judgment. (RJN, Ex. 10).

Three months later, Plaintiff filed the instant action.

### III. MOTION FOR DEFAULT JUDGMENT DISCUSSION

Also before the Court is Plaintiff's motion for default judgment against Defendant Homesale, Inc. ("Homesale"). On August 8, 2013, Plaintiff filed a proof of service showing that the United States Marshal Service served Homesale by delivering a copy of the summons on Kelly Crissinger, an employee of JP Morgan Chase Bank designated to accept service, on July 8, 2013. (Dkt. 30, at 4). Assuming this constituted proper service, Homesale was obligated to file an answer or other responsive pleading by July 29, 2013. *See* Fed. R. Civ. P. 12(a)(1)(A)(I). On August 8, 2013, the clerk entered default as to Homesale. (Dkt. 31). To date Homesale has not appeared.

Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCook*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). All

1  factual allegations in the complaint are taken as true, except those relating to damages. *Televideo*
2  *Sys., Inc. V. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).
3       Here, the *Eitel* factors weigh against default judgment. First, as *Eitel* recognized, the Federal
4  Rules of Civil Procedure strongly favor decisions on the merits. Second, an examination of the
5  merits of Plaintiff's substantive claims against Homesale and the sufficiency of the complaint
6  "essentially require plaintiff to state a claim on which it may recover." *Danning v. Lavine*, 572 F.2d
7  1386, 1388 (9th Cir. 1978). Plaintiff has failed to state any claim against Homesale. In fact,
8  Plaintiff does not appear to allege any misconduct against Homesale; besides the caption and the list
9  of defendants, the Court can locate no reference to Homesale in the complaint. Nor does Plaintiff's
10 Motion for Default Judgment provide any clarification. Rather, he simply alleges that JPMC
11 "granted and conveyed Plaintiff's property to Defendant Homesale who is now referred to as the
12 owner." (Dkt. 32, at 4). However, he does not explain what, precisely Homesale is alleged to have
13 done wrong. Default judgment is plainly unwarranted in such circumstances. *See Moore v. United*
14 *Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004) (holding that where plaintiff has failed to state a
15 claim, he is not entitled to a default judgment, and dismissal for failure to state a claim is proper).
16      Accordingly, Plaintiff's motion for default judgment against Homesale is **DENIED** and his
17 claims against Homesale are **DISMISSED** with leave to amend, contingent on the below ruling on
18 the motion to dismiss and related order to show cause.

### IV. MOTION TO DISMISS

20      Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon
21 which relief may be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6)
22 challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. Symington*, 51 F.3d
23 1480, 1484 (9th Cir. 1995). In considering such a court must take all allegations of material fact as
24 true and construe them in the light most favorable to the nonmoving party, although "conclusory
25 allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."
26 *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While a "complaint need not contain
27 detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible
28 on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 556 (2007)).

A.  <u>First Cause of Action: Violation of the Federal Insurance Deposit Act</u>

Plaintiff argues that he has stated a viable claim against the Chase Defendants and Coldwell Banker for violations of the Federal Deposit Insurance Act ("FDIA"). In particular, he points to 12 U.S.C. §§ 1813(g) and 1818(b). Section 1813(g) provides a definition for a savings bank, while § 1818(b) provides guidance for cease and desist proceedings with regards to insured depository institutions that are determined to be engaging in " unsafe or unsound practice." The OCC Consent Order discussed above was entered pursuant to the OCC's authority under § 1818(b). (Complaint, Ex. A, at 3). The crux of Plaintiff's allegations on this cause of action appear to be that the Chase Defendants violated the Consent Order in foreclosing on the property, and that Coldwell Banker enabled or participated in this violation through their association with the Chase Defendants.

There are two flaws that are fatal to Plaintiff's claims against the Chase Defendants and Coldwell Banker under the FDIA. First, to the degree that Plaintiff is alleging that the foreclosure of his home violated the consent order, this argument fails because the foreclosure on his house was completed in February 2011, several months *before* the April 2011 entry of the Consent Order. (Complaint ¶ 1; Complaint, Ex. A).

Second, and more critically, the FDIA does not provide a private right of action for individuals who are allegedly harmed by an institution's non-compliance with that Act. A court recently rejected similar claims brought under 12 U.S.C. §§ 1818, 1867, and 4631 by homeowners suing various financial institutions in connection with the pending foreclosure of their home in *Soberanis v. Mortgage Elec. Registration Sys., Inc.*, 13-CV-1296-H KSC, 2013 WL 4046458 (S.D. Cal. Aug. 8, 2013):

> Plaintiffs allege causes of action pursuant to 12 U.S.C. §§ 1818, 1867, and 4631. Section 1818(b) gives the Office of the Comptroller of the Currency the authority to issue charges against a depository institution for "unsafe or unsound" business practices. 12 U.S.C. § 1818(b). . . .

12

> Plaintiffs identify no provisions in these statutes providing for a private right of action, and offer no reason for the Court to imply a private right of action under these statutes. The statutes create comprehensive regulatory relationships between banking institutions and federal regulatory agencies. The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others. *See Alexander v. Sandoval*, 532 U.S. 275, 290, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). The statutes focus on the regulatory relationship and do not identify specific classes of individuals they were designed to protect. *See id.* at 289 (stating "statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons,' " nor do statutes that focus "on the agencies that will do the regulating" confer such rights); *see also Reyn's Pasta Bella, LLC v. Visa, U.S.A.*, 259 F.Supp.2d 992, 1002 (N.D. Cal.2003) (holding 12 U.S.C. § 1867, et seq. "bears no indication that Congress intended a private right of action"). Without an express or implied right of action, Plaintiffs can state no claim pursuant to these statutory provisions.
>
> None of these statutes provide for a private right of action and Plaintiffs provide no grounds for the Court to imply a private right of action. Plaintiffs allege no other violations of these statutes or regulations that give rise to a private right of action.

*Id.* at *6-7. Further, the Stipulation adopting the Consent Order explicitly provides that "[n]othing in this Stipulation or the Consent Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under this Stipulation or the Consent Order." Complaint, Ex. A (Docket No. 1 at 83-84)).

Absent a private right of action provided in the statute, Plaintiff may not personally bring a cause of action against Defendants based on these statutory provisions. Plaintiff's first cause of action is therefore **DISMISSED** with prejudice as to the Chase Defendants and Coldwell Banker.

B.       Second Cause of Action: Violation of the Real Estate Settlement Procedures Act

As detailed above, Plaintiff alleges that the Chase Defendants and violated RESPA through a variety of alleged irregularities in the treatment of his deed of trust and the foreclosure of his home. He also argues that the Chase Defendants violated RESPA in failing to timely respond to his QWR. The Court finds that Plaintiff's RESPA claims should be dismissed with prejudice.

1. Res Judicata Bars Plaintiff's RESPA Claim Accruing Before March 11, 2011

The Chase Defendants argue that res judicata bars Plaintiff's RESPA claims. "The doctrine of res judicata provides that a final judgment on the merits [in one lawsuit] bars further claims by parties or their privies [in a subsequent lawsuit] based on the same cause of action . . . ." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 (9th Cir. 2005) (internal quotation marks omitted). Res judicata, also know as claim preclusion, "serves to promote judicial efficiency by preventing multiple lawsuits and to enable the parties to rely on the finality of adjudications." *Dodd v. Hood River County*, 136 F.3d 1219, 1224-25 (9th Cir. 1998). The doctrine bars a Plaintiff from re-litigating claims adjudicated in a prior judgment, even if the prior decision was wrongly decided. *See, e.g.*, *Federated Dep't Stores, Inc. V. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."); *Proctor & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 500 (5th Cir. 2004) ("The question whether that judgment on the merits was correct, however, does not enter into our inquiry on the subject of *res judicata*, for even an incorrect judgment is entitled to *res judicata* effect.").

A defendant relying on res judicata must demonstrate that there is (1) an identity of claims (though the claims need not be identical), (2) a final judgment on the merits, and (3) there must be identity or privity between the parties in the two actions. *See Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 917 (9th Cir. 2012); *George v. United States*, No. C 07-04673 MHP, 2008 WL 1766945, at *2 (N.D. Cal. Apr. 17, 2008). Where these elements are met, res judicata not only bars claims that were actually adjudicated in the prior action, *but also all claims which could have been raised* in that action. *See W. Radio Servs. Co., Inc. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997) ("Res judicata . . . bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action."). Here, because of the adjudication in *Tidwell I*, res judicata operates to bar Plaintiff's federal claims asserted in this case arising before March 10, 2011.

First, there is clearly an identity of parties insofar as Plaintiff sued the Chase Defendants, Cal-Western, and Coldwell Banker in both the instant action and *Tidwell I*. Second, Plaintiff's

14

RESPA and other federal claims in *Tidwell I* were dismissed with prejudice as barred by the statute of limitations. Dismissals based on the statute of limitations are deemed an adjudication on the merits for purposes of res judicata. *See, e.g.*, *Mitchell v. Chapman*, 343 F.3d 811, 820 (6th Cir. 2003) ("[A] dismissal for failing to comply with a statute of limitations is a decision on the merits for claim preclusion purposes."); *World Triathlon Corp. v. Dunbar*, No. Civ. 05-00351JMS/KSC, 2006 WL 897586, at *3 (D. Hawaii Apr. 6, 2006) ("[T]here was a final judgment on the merits: . . . a judgment based on the statute of limitations is 'on the merits' for purposes of claim preclusion.").[9]

Finally, there is an identity of claims between *Tidwell I* and the instant case. The Ninth Circuit has mandated a four factor test for determining whether there is an "identity of claims":

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Turtle Island*, 673 F.3 at 917-18 (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)). The Ninth Circuit has "often held the common nucleus criterion to be outcome determinative under the first res judicata element." *Mpoyo v. Litton Electro-Optical Sys.*, 450 F.3d 985, 988 (9th Cir. 2005). This action arises out of the same transactional nucleus of facts as *Tidwell I*. "Whether two suits arise out of the 'same transaction nucleus' depends upon 'whether they are related to the same set of facts and whether they could conveniently be tried together.'" *ProShipLine Inc. V. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (quoting *W. Sys., Inc. V. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (emphasis omitted)). Both *Tidwell I* and the current action are based on the same set of facts. In both actions Plaintiff alleges the same course of conduct occurring from 2006 through 2011 in which Defendants are alleged to have fraudulently executed documents, recorded defective notices of default and assignments of the deed of trust,

---

[9] Because the court in *Tidwell I* declined to exercise supplemental jurisdiction over Plaintiff's *state* law claims and dismissed those claims without prejudice to Plaintiff filing them in state court, there was no adjudication on the merits of these claims. *See Lamont v. Time Warner, Inc.*, No. CV 12-8030-CAS (VBKx), 2012 WL 5248061, at *3 n.5 (C.D. Cal. Oct. 19, 2012). Accordingly there is no res judicata bar to Plaintiff's state law claims as a result of *Tidwell I*.

15

1  forged dates on documents, failed to offer loan modifications, and then illegally foreclosed
2  Plaintiff's home. In fact, as detailed above, a large portion of the allegations in the respective
3  complaints are identical. Thus, the current action and *Tidwell I* have an identity of issues.
4      Accordingly, Plaintiff's RESPA claims are clearly barred by res judicata to the extent they
5  are based on conduct which occurred before March 11, 2011 (the date *Tidwell I* was filed). The
6  RESPA claims herein either were raised or could have been raised in *Tidwell I*. Accordingly, these
7  claims are **DISMISSED** as to the Chase Defendants.
8      "'A pro se litigant must be given leave to amend his or her complaint unless it is absolutely
9  clear that the deficiencies of the complaint could not be cured by amendment.'" *Karim-Panahi v.*
10 *Los Angeles Police Dep't*, 839 F.2d 621, 621 (9th Cir. 1988) (qusoting *Noll v. Carlson*, 809 F.2d
11 1446, 1448 (9th Cir. 1987)). Given the circumstances, any attempt by Plaintiff to replead his
12 RESPA claim—or any other federal claims arising out of conduct which occurred prior to March 10,
13 2011—would be futile. Accordingly, dismissal of these claims is with prejudice and without leave
14 to amend. *See Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002) (permitting
15 dismissal without leave to amend where amendment would be futile).[10]

16     2.     <u>Plaintiff's RESPA Claim Arising After March 11, 2011 Fails to State a Claim</u>

17     Plaintiff's RESPA claim is also based on the Chase Defendants' alleged failure to timely
18 respond to his QWR. The Chase Defendants acknowledge that res judicata does not apply to this
19 claim insofar as it is based in conduct which occurred after *Tidwell I* was dismissed. However, they
20 argue that Plaintiff has failed to state a claim.
21     RESPA requires loan servicers to respond to QWRs from borrowers which request
22 "information relating to the servicing of [the] loan." 12 U.S.C. § 2605(e)(1). A QWR is defined by
23 statute as "written correspondence" which includes, in part, "a statement of the reasons for the belief
24 of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to

---

[10] The Court notes, in the alternative, that even if not barred by res judicata, any RESPA claim arising out of conduct before March 11, 2011 (this includes conduct relating to the notice of default, notice of trustee sale, and the like) would be barred by the one-year statute of limitations. *See Bloom v. Martin*, 865 F. Supp. 1377, 1386 (N.D. Cal. 1994) ("Private RESPA claims carry a one-year statute of limitations."). The latest any such claim could have accrued would be March 11, 2012. This action was filed over 15 months later on June 7, 2013.

the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B). Federal regulations further provide that:

> A written request does not constitute a qualified written request if it is delivered to a servicer more than 1 year after either the date of transfer of servicing or the date that the mortgage servicing loan amount was paid in full, whichever date is applicable.

24 C.F.R. § 3500.21(e)(2)(ii).

Plaintiff alleges that he sent the putative QWR to Chase Bank and Chase Home on July 5, 2012. However, Plaintiff's home was sold at a trustee's sale on February 4, 2011. (Complaint, Ex. O). At that time, the borrower-servicer relationship between Plaintiff and any Chase Defendant ceased. Accordingly, Plaintiff's written request does not qualify as a QWR under federal law as it was sent more than a year *after* the Chase Defendants ceased to be a servicer under the loan. *See, e.g.*, *Fantroy v. First Fin. Bank, N.A.*, 12-CV-82-N-BH, 2013 WL 4434913 (N.D. Tex. Aug. 19, 2013) ("Ultimately, because he sent the written requests more than five years after his loan was terminated by the foreclosure and ceased being serviced, the requests were not QWRs."); *Sanchez v. Onewest Bank, FSB*, 11-cv-6820, 2013 WL 139870 (N.D. Ill. Jan. 10, 2013) ("IndyMac could not have been servicing the loan at the time because the Circuit Court had already approved the judicial sale. . . . IndyMac thus had no obligation to respond under RESPA."); *Bros v. Bank of Am., N.A.*, 12-cv-03121 EJD, 2012 WL 4471590 (N.D. Cal. Sept. 26, 2012) ("In any event, it is unlikely the QWR could relate to loan servicing when it was sent in January 2012, since, at that point, Plaintiff had been in default since sometime in late 2008, and the foreclosure process had commenced in April 2009. The 'servicing' of Plaintiff's loan was no longer an issue when the QWR was sent nearly three years later." (Citation omitted)).

Accordingly, Plaintiff's RESPA claim arising out of Plaintiff's alleged QWR is **DISMISSED** with prejudice as to the Chase Defendants. *See Flowers*, 295 F.3d at 976 (permitting dismissal without leave to amend where amendment would be futile).

## V. ORDER AS TO REMAINING CLAIMS

For the reasons articulated above, Plaintiff's first cause of action, brought under the FDIA, is dismissed with prejudice as to the Chase Defendants and Coldwell Banker. Plaintiff's claims under RESPA (whether based on the alleged failure to respond to the QWR or for alleged irregularities arising from the Defendants' handling of the deed of trust, notice of default, and the like) are dismissed with prejudice as to the Chase Defendants. Further, during the September 19, 2013 hearing, Plaintiff disclaimed any intention of alleging a RESPA claim against Coldwell Banker.

To the extent that this dismissal (with prejudice) of Plaintiff's federal claims against the Chase Defendants and Coldwell Banker eliminates *all* of the federal claims in this action, the Court would be inclined to refuse to exercise supplemental jurisdiction over Plaintiff's state law claims. *See, e.g.*, *S. Cal. Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co.*, 558 F.3d 1028, 1036 (9th Cir. 2009) ("Because the district court appropriately dismissed all of the federal claims, it acted within its discretion in declining to resolve the state law claims under its supplemental jurisdiction."). The Court is so inclined given the early nature of these proceedings and the fact that an adverse ruling against Plaintiff on related (and in places identical) state law claims is currently on appeal before the California Court of Appeals. If Plaintiff loses his appeal, most, if not all, of the current state law claims may very well be barred by res judicata. On the other hand, were this Court to exercise jurisdiction over the state law claims and Plaintiff wins his pending appeal, there would be simultaneous duplicative actions on the same claims.

Were the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims, the dismissal of the state law claims would be without prejudice to Plaintiff pursuing them in California state court.

However, there are three defendants who did not join in either motion to dismiss – Cal-Western, Homesale, or Prommis Solutions, LLC. It is unclear to what extent Plaintiff intended to assert his *federal* causes of action or on what basis such a claim would be based. It appears to the Court that Plaintiff only intended to assert his two federal causes of action against the Chase Defendants and Coldwell Banker.

However, out of an abundance of caution, Plaintiff is ordered to show cause within 14 days of this order as to whether he is attempting to assert an FDIA or RESPA claim against Defendants Cal-Western, Homesale, or Prommis Solutions, LLC. To the extent Plaintiff is attempting to assert either federal cause of action against these defendants, Plaintiff is further ordered to state the factual basis for such a claim. Plaintiff's response to this order shall not exceed 10 double spaced pages in length and shall not repeat any claims against the Chase Defendants or Coldwell Banker.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment against Defendant Homesale is **DENIED**.

Defendant Rust Consulting LLC is **DISMISSED** with prejudice.

The motions to dismiss filed by the Chase Defendants and Caldwell banker are **GRANTED** with prejudice as to Plaintiff's first and second causes of action against the Chase Defendants and Caldwell Banker. The Court reserves its ruling on the state causes of action pending Plaintiff's compliance with the above mentioned order to show cause.

Plaintiff is **ORDERED TO SHOW CAUSE** as to the extent Plaintiff is attempting to state a federal claim under the FDIA or RESPA against Defendants Cal-Western, Homesale, and Prommis Solutions, Inc. If Plaintiff is attempting to state either claim against these Defendants, Plaintiff is ordered to describe the factual bases for such a claim. Plaintiff's response shall not exceed 10 double spaced pages and shall be filed by **October 25, 2013**.

This order disposes of Docket Nos. 7, 17, 32, 39, and 64.

IT IS SO ORDERED.

Dated: October 8, 2013

EDWARD M. CHEN  
United States District Judge

19